IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MELCHOR ARIAS, ADMINISTRATOR OF ESTATE OF IAN ARIAS, MARIE CRISTINA KURCAN MOTHER OF IAN ARIAS, DECEASED,<br><br>Plaintiffs,<br><br>CARL DANBERG, KARL HINES, PERRY PHELPS, CERTAIN UNKNOWN INDIVIDUAL EMPLOYEES OF THE STATE OF DELAWARE DEPARTMENT OF CORRECTION; AND STATE OF DELAWARE DEPARTMENT OF CORRECTION; RITA LANDGRAF, KEVIN ANN HUCKSHORN, CLARENCE WATSON, M.D., GREGORY A. VALENTINE, UNKNOWN INDIVIDUAL EMPLOYEES OF THE DELAWARE HEALTH AND SOCIAL SERVICES, DIVISION OF SUBSTANCE ABUSE AND MENTAL HEALTH, DELAWARE PSYCHIATRIC CENTER, CORRECT CARE SOLUTIONS, LLC, CERTAIN UNKNOWN INDIVIDUAL EMPLOYEES OF CORRECT CARE SOLUTIONS, LLC<br><br>Defendants. | C.A. No. 1:15-cv-00197-GMS |

## **MEMORANDUM**

### **I. INTRODUCTION**

The plaintiffs Melchor Arias, Administrator of the Estate of Ian Arias and brother of Ian Arias, and Marie Cristina Kurcan, mother of Ian Arias, (collectively, "Plaintiffs"), filed this lawsuit on March 2, 2015. (D.I. 1.) A First Amended Complaint was subsequently filed on

March 20, 2015. (D.I. 6.) The Complaint asserts civil rights violations under 42 U.S.C. § 1983 and a state law wrongful death and survivor action. The Complaint names as defendants the State of Delaware, the Delaware Department of Health and Social Services ("DHSS"), Delaware Division of Substance Abuse and Mental Health ("DSAMH"), and Delaware Psychiatric Center ("DPC") (collectively, the "State Agency Defendants"). The Complaint also names DHSS Cabinet Secretary Rita Landgraf, former-DSAMH Director Kevin Ann Huckshorn, and DPC Director Gregory Valentine (collectively, the "State Officer Defendants" and, collectively with the State Agency Defendants, the "State Defendants"). The complaint also names the Delaware Department of Correction ("DOC"), and DOC officials Carl Danberg, Commissioner of DOC, Karl Hines, as both the Acting Commissioner and the Bureau Chief of Community Corrections, and Perry Phelps, as the Warden of James T. Vuaghn Correctional Center (the "DOC Defendants"). Finally, the Complaint names Dr. Clarence Watson, MD ("Watson"). (Collectively the State Defendants, the DOC Defendants, and Watson are "the Defendants.")

On May 8, 2015, Watson filed a motion to dismiss in lieu of an answer, (D.I. 18, 19), the State Defendants filed a motion to dismiss and opening brief, (D.I. 20, 21), and the DOC Defendants filed a motion to dismiss and opening brief. (D.I. 23, 24.) On May 29, 2015, Watson filed a Supplemental Motion to Dismiss for Failure to State a Claim. (D.I. 26). On June 16, 2015, Plaintiffs filed answering briefs in response to Watson's motion. (D.I. 27, 28, 29.) On July 6, 2015, Watson filed a reply brief, (D.I. 30), the State Defendants filed a reply brief, (D.I. 31), and the DOC Defendants filed a reply brief. (D.I. 32.) For the reasons stated below, the court will grant the Defendants' motion to dismiss all counts except for Count I as asserted against Watson.

## II. BACKGROUND

This Complaint arises from the suicide of Ian Arias in 2013 while in pre-trial detention. Mr. Arias had a history of major depressive disorder with multiple suicide attempts. On June 28, 2012, Ian Arias was arrested for criminal charges and placed in the custody of the Department of Correction ("DOC"). During pre-trial detention, Mr. Arias attempted to commit suicide at least twice and continually verbalized suicidal ideations. By court order, Mr. Arias was transferred from the DOC under the Treatment Review Committee (TRC) admission process to Delaware Psychiatric Center (DPC), Jane E. Mitchell Forensic Unit (the "Mitchell Unit") for psychiatric stabilization. (D.I. 6 at 6.) He was admitted on November 16, 2012 and placed on a 1:1 monitor until December 10, 2012 when he denied suicidal ideations and was placed on 15 minute checks. On December 25, 2012, Mr. Arias again started expressing suicidal ideations and returned to 1:1 monitoring. *Id.* One day later, Mr. Arias was taken off of 1:1 monitoring and placed back on fifteen minute checks. *Id.* Mr. Arias' verbalizations about committing suicide did not cease with medication. *Id.*

On February 13, 2013 Watson discharged Mr. Arias from the Mitchell Unit even though Arias exhibited psychomotor retardation and reported feeling suicidal. *Id.* at 7. Mr. Arias informed Dr. Watson and the DPC staff that he would attempt suicide again. *Id.* Arias' social worker informed Watson and the other DPS employees that Mr. Arias was not ready to be transferred back to the DOC. *Id.* Despite all of this, Mr. Arias was transferred to the James T. Vaughn Correctional Center for pre-trial supervision. Shortly after, Mr. Arias entered the infirmary in the care of the CCS.

On February 13, 2013, Mr. Arias was discharged from the infirmary by CCS and transferred back to pre-trial supervision despite continuous suicide threats by Mr. Arias. *Id.* at 7-8. Mr. Arias was not placed under constant supervision. At approximately 10:10 a.m. on March 5, 2013, Mr. Arias was found unconscious in his cell by prison officials, having hung himself with bed sheets. *Id.* at 8.

Count I of the Plaintiffs' complaint alleges Cruel and Unusual Punishment in violation of his Civil Rights under state law, 42 U.S.C. § 1983. Counts II, III and IV allege Failure to Train and/or Maintenance of Wrongful Customs, Practices and Policies in violation of Civil Rights under state law, 42 U.S.C. § 1983. Count V Alleges Wrongful Death under Delaware Code Annotated Title 10, § 3724. Count VI is a Survival Action under Delaware Code Annotated Title 10, § 3701. Count VII alleges Deprivation of Plaintiffs' Fourteenth Amendment Rights of Personal Security, Physical Integrity and Privacy, Count VIII alleges Deprivation of Plaintiffs' Fourteenth Amendment Rights of Personal Security, Physical Integrity and Privacy Special Relationship. Finally, Count IX alleges Deprivation of Plaintiffs' Fourteenth Amendment Rights of Personal Security, Physical Integrity and Privacy-State Created Danger.[1]

## III. STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The touchstone of the pleading standard is plausibility. *Bistrian v. Levi*, 696 F.3d 352 365 (3d Cir.

---

[1] Watson filed a Supplemental Motion to Dismiss the Plaintiffs' medical negligence claims for failure to comply with the requirements of Delaware Code Annotated Title 18, § 6853(a) to file an Affidavit of Merit in support of their medical negligence claims. (D.I. 25). On March 16, 2015 the court granted a sixty-day extension to the Plaintiffs to file an Affidavit of Merit, (D.I. 4), which the Plaintiff's did not meet. Subsequently, the Plaintiffs withdrew any claims regarding medical negligence. (D.I. 28 at 5). Therefore, the court will dismiss Counts V and VI and will not address these claims on the merits.

4

2012). Plaintiffs must provide sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a motion to dismiss, the court "accept[s] all factual allegations as true, construe[s] the complaint in the light most favorable to the plaintiff, and determine[s] whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV. DISCUSSION

The Defendants argue that each of the Plaintiffs' nine counts should be dismissed for failure to state a claim pursuant to Rule 12(b)(6) and for lack of subject matter jurisdiction. The Court will examine each of the Plaintiffs' claims in turn.

### A. Civil Rights Violations under Section 1983

The Plaintiffs assert various § 1983 claims. The Defendants respond that the Plaintiffs' § 1983 claims are barred by the statute of limitations and the sovereign immunity doctrine. The Court will address each of these claims in turn.

#### 1. Statute of Limitations

The Defendants argue that the Plaintiffs' § 1983 claims are barred by the statute of limitations. (D.I. 19 at 5-11, D.I. 21 at 10-11.) The Plaintiffs respond that the statute of limitations does not bar their claims and that (1) the Continuing Wrong exception applies, (2) the Date of Discovery exception applies, and (3) the Federal Equitable Tolling Doctrine applies. (D.I 28 at 9-15.)

5

Federal courts apply the statute of limitations that governs personal injury tort claims in the forum state for actions brought pursuant to 42 U.S.C. § 1983. *Wallace v. Kato,* 549 U.S. 384, 387, 127 (2007); *Owens v. Okure,* 488 U.S. 235, 249–50 (1989). A § 1983 claim is characterized as a personal-injury claim. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010). The Delaware statute of limitations for actions seeking redress of personal injury claims is two years. *See* Del. Code Ann. tit. 10 § 8119; *Estate of Miller ex rel. Miller v. Hudson*, 528 F. App'x 238, 240 (3d Cir. 2013). Thus, Plaintiffs' § 1983 claims are subject to a two-year statute of limitations. *See e.g., Lamb-Bowman v. Del. State Univ.*, 1999 WL 1250889, at *8 (D. Del. Dec. 10, 1999) (citing Del. Code Ann. tit. 10 § 8119 and applying a two-year statute of limitations to a § 1983 claim).

While tolling of the statute of limitations is governed by state law, the date of the claim's accrual is governed by federal law. *Tearpock-Martini*, 756 F.3d at 232, 235 (2014) (citing *Wallace v. Kato,* 549 U.S. 384, 388 (2007)). "A section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that forms the basis of his cause of action." *Carr v. Town of Dewey Beach*, 730 F. Supp. 591, 603 (D. Del. 1990) (citing *Deary v. Three Un-named Police Officers*, 746 F.2d 185, 197 n.16 (3d Cir. 1984)).

Mr. Arias received treatment at DPC from November 16, 2012 to February 13, 2013. (D.I. 6 at 7-8.) His suicide occurred on March 5, 2013. The Complaint was filed on March 2, 2015. (D.I. 1.) The court concludes that March 5, 2013 is the date when the statute of limitations began to accrue because that is the date when the injury occurred. Given this finding, the action is not barred by the statute of limitations.

### 2. Sovereign Immunity

#### a. State Agencies

The State Defendants and the DOC Defendants argue that the Plaintiffs' claims are barred by the Eleventh Amendment. (D.I. 21 at 6-10, D.I. 24 at 6-11.) "[T]he Eleventh Amendment is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)). Courts have consistently held that the "test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one." *Sossamon v. Texas*, 131 S. Ct. 1651, 1658 (2011) (citing *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999)). A state's waiver of sovereign immunity must be "unequivocally expressed." *Pennhurst*, 465 U.S. at 99. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thomburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). The Eleventh Amendment protects states and their agencies and departments from suit in federal court. *Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100-101 (1984); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997).

The state has not given its consent to be sued, nor has it authorized suit against any of the named agencies, which are all subdivisions. Thus, the Eleventh Amendment bars this action as to these defendants.

### b. State Agency Officials

Defendants argue that the complaints against the various officials are official capacity claims barred by the doctrine of qualified immunity. (D.I. 21 at 6-10, D.I. 24 at 6-11.) Plaintiffs deny that they raise official capacity claims and dispute that the qualified sovereign immunity doctrine applies. (D.I. 27 at 9, D.I. 28 at 8-11, D.I. 29 at 9). Additionally, Dr. Watson argues that he is protected by the derivative sovereign immunity

7

doctrine as a contractor who works for the government under appropriately conferred authority. (D.I. 19 at 12-13); *Boyle v. United Techs. Corp.*, 487 U.S. 500, 506 (1988). This argument will be addressed in the subsequent section.

As with a suit against a state as a whole, the ability to bring a suit against state officials in their official capacities requires a state to explicitly waive sovereign immunity. *See Rodriguez v. Stevenson*, 243 F.Supp.2d 58, 63 (D. Del. 2002) (holding that state defendants in their official capacity were immune from suit "unless the state has waived its immunity or Congress has abrogated the state's immunity."). Qualified Immunity shields government officials from civil damages liability unless the official personally violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (per curiam). A right is clearly established when "every reasonable official would have understood that what he is doing violates that right." *Id.* (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)).

In *Taylor*, the Supreme Court addressed a § 1983 claim against the commissioner of the Delaware Department of Correction and the warden of HRYCI for failing to prevent an inmate's suicide by "failing to supervise and monitor the private contractor that provided the medical treatment." 135 S. Ct. at 2043. The Court held that "'an incarcerated person's right to the proper implementation of adequate suicide prevention protocols 'was not a clearly established right at the time of the inmate's death.'" *Id.* at 2044. Therefore, the Court held that the commissioner and the warden had not violated a clearly established law and, as a result, were entitled to qualified immunity with respect to the supervisory claim against them. *Id.*

Similarly, the court concludes in this case that the State Agency Officials and the DOC Officials are entitled to qualified immunity. The proper implementation of adequate suicide

8

prevention protocols is not a clearly established statutory or constitutional right. Thus, the State Defendants and the DOC Defendants are shielded from civil damages. Dr. Watson is not protected by derivate sovereign immunity because, as discussed below, the Plaintiffs assert facts which suggest that the Doctor violated an established constitutional right, and did so in his individual capacity.

### 3. Cruel and Unusual Punishment Claims

#### a. Deliberate Indifference

The Plaintiffs assert that the vulnerability of Arias to suicide constituted a serious medical need that the Defendants failed to address. They claim this inaction constituted deliberate indifference which could be expected to lead to substantial and unnecessary injury and which did in fact lead to the death of Mr. Arias. (D.I. 6 at 8.) The Defendants respond that the Plaintiffs have not asserted facts to meet the deliberate indifference standard. (D.I. 24 at 16-18).

The Eighth and Fourteenth Amendments impose upon prison officials a duty to address the serious medical needs of a pretrial detainee, including psychiatric needs. *Colburn v. Upper Darby Township,* 838 F.2d 663, 668-69 (3d Cir. 1988). If prison officials know of a particular detainee's vulnerability to suicide, they may not be deliberately indifferent to that vulnerability. *See Simmons v. City of Philadelphia,* 947 F.2d 1042, 1064 (3d Cir.1991); *Williams v. Borough of West Chester,* 891 F.2d 458, 464 (3d Cir.1989); *Serafin v. City of Johnstown,* 53 F. App'x 211, 213 (3d Cir. 2002). In order to make out a claim for an Eighth Amendment violation against a prison official, a defendant must prove: (1) the deprivation was "objectively, sufficiently serious" and (2) the prison official had "a sufficiently culpable state of mind." *Farmer v. Brennan,* 511 U.S. 825, 834, (1994) (quotation marks and citations omitted). A culpable state of mind requires that a prison official is "aware of facts from which the inference could be drawn that a

9

substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001).

In analyzing the facts at issue, the court relies on the cases *Freedman v. City of Allentown* and *Colburn v. Darby Township* as guides for the deliberate indifference analysis. In *Freedman,* the Third Circuit Court of Appeals found that prison officials were not deliberately indifferent after failing to act in a case where they saw that the prisoner had large prominent scars on his wrists from previous suicide attempts. 853 F.2d 1111, 1113 (3d Cir. 1988). The Third Circuit held that the failure of the prison officials to recognize the scars as "suicide hesitation cuts" was merely negligence, and therefore, did not support a § 1983 claim. *Id.* at 1116. On the other hand, in *Colburn,* the Court of Appeals found reckless indifference where there were visible scars on the prisoners wrists, the township's police knew that the prisoner had jumped from a window the preceding day, the detaining officer had to prevent her from swallowing three Valium pills, and the prisoner shot herself with a gun she had concealed on her person while detained. *Colburn,* 838 F.2d 663, 664–65 (3d Cir. 1988). *See also Estate of Puza v. Carbon Cty.*, 586 F. Supp. 2d 271, 278 (M.D. Pa. 2007) *aff'd sub nom; Barker-Puza v. Carbon Cty.*, 304 F. App'x 47 (3d Cir. 2008).

The court finds that the facts pled are insufficient to plausibly establish that the State Defendants and DOC Defendants were deliberately indifferent. In contrast, as to Dr. Watson, the Plaintiffs' allegations at least cross the plausibility threshold. State and DOC officials may not have been actually aware of the substantial suicide risk that Arias posed. On the other hand, the Plaintiffs' averments are sufficient to establish for purposes of this motion that Watson was aware of the risk for suicide. Dr. Watson was the psychiatrist assigned to Arias after he attempted suicide twice while in the custody of the DOC. Dr. Watson was aware of Mr. Arias'

10

history of mental illness and suicide attempts and knew Arias' threatened suicide if released. Furthermore, Dr. Watson's colleagues warned him that Arias was not ready to be released. In spite of this counsel, Watson released Arias back into pre-trial detention without any special instructions or precautions. Less than one month later, Arias took his own life. These averments are sufficient to survive a motion to dismiss under the circumstances. In other words, the allegations of the Plaintiff's complaints with regards to Dr. Watson are substantially closer to *Colburn* than *Freedman*. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

### b. Supervisory Liability

The Plaintiffs' deliberate indifference claims assigning responsibility to the supervisors for their deficient custom practices and policies require a different analysis. The Plaintiffs argue they have asserted facts, which if proven demonstrate that Dr. Watson, State Agency Officials, and DOC Defendants were aware of a "pattern" of suicides. (D.I. 28 at 15-17, D.I. 29 at 11-12.) Between 2006 and Arias' suicide, at least six inmates died of suicide while in the custody of the DOC. (D.I. 1 at 4.) The Plaintiffs allege that these events led to a federal investigation.

Initially, the actions of an employee alone will not result in §1983 liability under the theory of *respondeat superior*. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007). In *Baraka*, the Third Circuit noted that personal involvement may be established through: (1) personal direction or actual participation by the defendant in the misconduct; or (2) knowledge of and acquiescence in the misconduct. *Id.* Failure to assert facts showing personal involvement

11

of the defendant will result in dismissal. *Sample v. Diecks,* 885 F.2d 1099, 1117-18 (3d Cir. 1989); *see also Iqbal,* 129 S. Ct. at 1949–54.

Here, there are no allegations that State Official Defendants were directly or indirectly involved in Mr. Arias' care. 318 F. 3d 575 (3d Cir. 2003). Absent allegations of personal involvement in the alleged wrongdoing, supervisor liability cannot be proven. *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988); *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005).

### c. Failure to Train

The Plaintiffs contend that Mr. Arias death was the direct result of the customs, practices, policies and procedures of the DOC Defendants, for failing to properly train and supervise DOC personnel to recognize suicidal inmates, to evaluate whether an inmate suffering from suicidal ideations should be returned to the general prison population, and to institute appropriate procedures for the timely transmission of important medical information to appropriate personnel. (D.I. 6 at 9-11). The DOC Defendants and Dr. Watson claim that the alleged failure to train, supervise or implement policies must be dismissed for failure to plead any supporting facts. (D.I. 19 at 13-15).

Section 1983 liability results only if the defendants caused an employee to violate another's constitutional rights, through execution of an official policy or settled informal custom. *See id.* at 691-94; *Serafin,* 53 F. App'x 211 at 213. The Third Circuit follows a four-part test based on the Supreme Court's reasoning in *City of Canton v. Harris,* 489 U.S. 378 (1989). The plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor

12

was indifferent to that risk; and (4) the injury resulted from the policy or practice. *See Sample,* 885 F.2d at 1118; *Beers-Capitol v. Whetzel,* 256 F.3d 120, 134 (3d Cir. 2001). This four-part test may be satisfied by showing either that the state actor failed to respond adequately to a pattern of past occurrences of injuries or that the City failed to respond adequately to a great and obvious risk of constitutionally cognizable harm. *Id.* at 136-37; *Serafin v. City of Johnstown,* 53 F. App'x at 214. ("Particularly after *Iqbal,* the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue.") (quoting *Santiago v. Warminster Twp.,* 629 F.3d 121, 129 n. 5 (3d Cir. 2010)).

The court finds that the Plaintiffs have not demonstrated that the policies at issue in this case are deficient. In particular, the court notes that policies are not deficient simply because they are not the best. *See Serafin v. City of Johnstown,* 53 F. App'x at 215 ("The fact that the City's policy was not the most effective policy possible, however, does not, without more, create an unreasonable risk to detainees' safety or demonstrate the City's indifference to such a risk, and there is no 'more' here.") Here, it is clear that the DOC Defendants did not completely fail to act; Arias spent three of his eight months incarcerated in treatment at the DPC. (D.I. 24 at 8). The Plaintiffs fail to allege that any of the Defendants' management practices led to a specific deficient policy or custom.

Additionally, the Plaintiffs have not demonstrated that the prison considered and rejected other more effective measures of suicide prevention. The Plaintiffs have not identified specific training that could reasonably have been expected to prevent Mr. Arias' suicide nor demonstrated that the risk reduction associated with the proposed training was so great and so

13

obvious that the failure of those responsible for the content of the training program can reasonably be attributed to deliberate indifference. *Woloszyn,* 396 F.3d at 325. *Estate of Puza v. Carbon Cty.*, 586 F. Supp. 2d 271, 280-81 (M.D. Pa. 2007) *aff'd sub nom. Barker-Puza*, 304 F. App'x 47. While the record suggests that some defendants were negligent, negligence is simply not enough. *See id.*

## V. CONCLUSION

For the foregoing reasons the court will grant the Defendants' motion to dismiss all counts against the Plaintiffs, except for Count I against Dr. Watson (D.I. 18, 20, 23). The court declines to dismiss Count I as asserted against Dr. Watson at this time.

Dated: December 16, 2015

UNITED STATES DISTRICT COURT